UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAM J. PHELPS,

                        Plaintiff,

      v.                                         **DECISION AND ORDER**
                                                         12-CV-976S

CAROLYN W. COLVIN,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

      1.      Plaintiff Pam Phelps challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act") from April 27, 2009, when she was involved in a motor vehicle accident, to March 3, 2011, when she was involved in a second motor vehicle accident.

      2.      On September 18, 2009, Phelps filed an application for Disability Insurance Benefits ("DIB") under Title II of the Act. She alleged she had been disabled since April 27, 2009, due to back and neck injuries she sustained in a motor vehicle accident. (R. 213-16, 254-65.)[2] The application were denied. (R. 126-29.) At Phelps' request, a hearing was held before Administrative Law Judge Nancy Gregg Pasiecznik on March 28, 2011 (R. 52-78), followed by a supplemental hearing on June 15, 2011 (R. 79-117). Phelps appeared in person, with representation, and testified. (Id.)

      3.      ALJ Pasiecznik considered the case *de novo*, and on July 13, 2011, issued

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. She is substituted for Michael J. Astrue as the Defendant in this action under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Citations to the administrative record are designated as "R."

1

a written decision finding Plaintiff disabled beginning March 3, 2011, when she was involved in a second motor vehicle accident, but not disabled prior to that date. (R. 19-49.) Phelps filed a request for review with the Appeals Council, which denied the request on September 8, 2012. She then commenced this civil action on October 15, 2012, challenging the Commissioner's final decision.[3]

4. On April 24, 2013, the Commissioner and Phelps each filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The motions were fully briefed on June 14, 2014, at which time this Court took the matter under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is denied, Phelps' motion is granted, and this case will be remanded.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's May 26, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable

>    to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. In this case, the ALJ made the following findings with regard to the five-step process: (1) Phelps had not engaged in substantial gainful activity since her alleged disability onset date of April 27, 2009 (R. 28); (2) her degenerative disc disease and degenerative joint changes in the cervical spine at C5-6, with mild left-sided foraminal encroachment; degenerative disc changes in the mid-to-lower thoracic spine with levoscoliosis and thoracid kyphosis; very mild disc desiccation at L3-4; mild disc bulge of the anulus and mild facet arthropathy at L4-5; mild right-sided facet arthropathy and a broad-based mild diffuse left paramedian disc herniation at L5-S1 with mild displacement of the left S1 nerve root with significant deformity; mild encroachment upon the left neural

foramen at the left L5 nerve root with left L5 and/or S1 radiculopathy; conjoined S1 and S2 nerve roots; myofascial pain; osteoporosis of the thoracic spine; left shoulder impingement syndrome that developed after the March 3, 2011 accident; adjustment disorder with mixed anxiety and depressed mood; and pain associated with her general medical condition are severe impairments within the meaning of the Act (Id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 11); (4) prior to March 3, 2011, Phelps retained the residual functional capacity ("RFC") to perform sedentary work; but her conditions worsened after the second motor vehicle accident, and she has been disabled from working since March 3, 2011 (R. 34-41); (5) since April 27, 2009, she has been unable to perform her past relevant work (R. 42); and (6) until Phelps became disabled on March 3, 2011, jobs existed in substantial number in the national economy that an individual of her age, education, past relevant experience, and RFC could perform (R. 42).

11.   Phelps challenges the determination of her disability onset date on the grounds that: (a) the ALJ selectively adopted only portions of her treating chiropractor's opinion, (b) did not properly weigh the chiropractor's opinion under SSR 06-03, and (c) relied on testimony from a vocational expert that was inconsistent with the Dictionary of Occupational Titles ("DOT").

12.   The Social Security regulations distinguish between "acceptable medical sources," including licensed physicians and psychologists, 20 C.F.R. § 416.913(a), and "other sources," such as chiropractors and nurse-practitioners, who are not "acceptable medical sources," § 416.913(d)(1). "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions

may be entitled to controlling weight." SSR No. 06-03p, 2006 SSR LEXIS 5, at *4. Nevertheless, opinions from "other sources" "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id. at *8. Sources not technically deemed "acceptable medical sources," such as chiropractors, are important in the medical evaluation because they "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." Id.

The ALJ need not afford controlling weight to a chiropractor's opinion, Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995), but must afford some weight to a treating chiropractor's assessment. Losquadro v. Astrue, No. 11-CV-1798, 2012 U.S. Dist. LEXIS 135703, at * (E.D.N.Y. Sept. 21, 2012) (citations omitted). In determining how much weight to afford such "other source" opinion, the ALJ may consider: (i) how long the source has known the plaintiff and the frequency of treatment, (ii) how consistent the opinion is with other evidence; (iii) the degree to which the source presents relevant evidence to support an opinion; (iv) how well the source explains the opinion; (v) whether the source has a specialty or area of expertise related to the individual's impairment; and (vi) any other factors that tend to support or refute the opinion. Solsbee v. Astrue, 737 F. Supp. 2d 102, 114 (W.D.N.Y. 2010) (citing SSR 06-03p).

13.  Dr. Acquisto's treatment notes indicate that he saw Phelps at least weekly, and frequently more than once per week, from April 30, 2009 through March 2011. R. 421-25, 429-30, 451-53, 458-59, 467-71, 473-75, 516-17, 520-21, 524, 531-33, 666-69, 672-705, 707-20, 755. He periodically opined, from April 30 through November 11, 2009, that Phelps was totally disabled and unable to perform job duties. R. 553-4, 560, 564, 576, 586, 591-93, 735.

6

On November 11, 2009, Acquisto completed two reports, one of which again noted a total disability and inability to perform job duties. R. 735. In the second, Acquisto reported that, at an examination one week prior, Phelps: exhibited normal motor function, including normal strength, bulk, and tone, showed no atrophy or muscle weakness, was able to tandem walk unaided, walk toe to toe and heel to heel, had no significant gait abnormality, and exhibited normal gross and fine manipulation. She did experience mild to moderate muscle spasms in the cervical, thoracic, and lumbosacral spine, had range of motion limitations in the cervical and lumbar spine, and was unable to rise from a squatting position. R. 606-11.

One month later, on December 11, 2009, Dr. Acquisto indicated that Phelps had a partial disability and could return to work with a 10 pound lifting limitation, standing and walking no more than two hours per day with breaks, no repetitive climbing or stooping, and stretch breaks every 1 to 2 hours. R. 734. His reports on January 8 and March 11, 2010 detailed the same restrictions. R. 732-33. On April 1, 2010, and periodically thereafter, Acquisto again indicated that Phelps was totally disabled and unable to perform job duties.  R. 670, 706, 721-31.

14.    ALJ Pasiecznik gave Dr. Acquisto's opinions of November 11, 2009 "significant weight under SSR 06-03p except as to his conclusion that the claimant was totally disabled." R. 38. The ALJ determined that the November 11th assessment and Acquisto's subsequent reports through March 11, 2010, were "consistent with a sedentary residual functional capacity." She went on to conclude that Phelps was able to perform sedentary work from April 27, 2009 until March 3, 2011, when a second motor vehicle further reduced her functional capacity. R. 34-41. Id.

15. In short, although Acquisto treated Phelps on at least a weekly basis over a two-year period, the ALJ accorded "significant weight" to his opinions over a four-month period only. Without discussion, the ALJ applied those opinions to the entire two-year treatment period, notwithstanding Acquisto's assessment that, except for that four-month duration, Phelps was unable to perform any job duties. "Th[e] selective adoption of only the least supportive portions of a medical source's statements is not permissible." Solsbee, 737 F. Supp. 2d at 113 (citation omitted).

In addition to rejecting the bulk of Acquisto's opinions, ALJ Pasiecznik did not assign any weight to the assessments of a treating orthopedic doctor and a consultative examining physician. Thus, there is no indication the ALJ considered the consistency of Acquisto's opinions with the other record evidence. There also is no indication that the ALJ weighed any of the other five factors set out in SSR 06-03p. Though it is incumbent on an ALJ to at all times consider these factors and explain the reasons for the weight assigned to an "other source" opinion, it is particularly vital here, where the ALJ has chosen to accept some of Dr. Acquisto's statements and disregard others. Because the Court is left to guess at the reasons, remand is warranted.

16. Phelps also maintains the ALJ erred at step five when she relied on testimony from a vocational expert that was inconsistent with the DOT. Under SSR 00-4p, where there is a conflict between VE evidence and the DOT, the ALJ must obtain a reasonable explanation for the inconsistency and explain in the decision how the conflict was resolved. 2000 SSR LEXIS 8. Here, ALJ Pasiecznik set out the VE's explanations and concluded the reasoning was satisfactory. For example, the VE testified that Telephone Survey Worker, though listed as in the DOT as requiring "light" exertion, is typically performed at a

"sedentary level" because the DOT had "included census workers and door-to-door survey workers under this DOT number." (R. 108.) Phelps has not cited to any evidence contradicting the VE's statement. As such, the ALJ applied the correct standard and her resolution is supported by substantial evidence.

\*\*\*\*

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED, and this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated: January 6, 2014
       Buffalo, New York

                                              /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                                 Chief Judge
                                         United States District Court